UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE J. REED,

        Plaintiff,

v.

I.B.C. PRISON HEALTH &
MEDICAL SERVICES, *et al.*,

        Defendants.
_____/

Case No. 1:09-cv-187

Hon. Gordon J. Quist

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on plaintiff's "notice of request for default judgement," which has been docketed as a motion for default judgment (docket no. 19) and defendants' motion to dismiss (docket no. 20).

**I.    Background**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Plaintiff has filed a 69-page complaint alleging deliberate indifference to his serious medical needs while he was a prisoner at the Ionia Bellamy Creek Correctional Facility (IBC).

Plaintiff has named the following defendants: IBC Prison Health Services; Dr. Scott Holmes; RN Sharon L. Ward; RN James R. Leland; RN Connie L. Chick; RN Kelly S. Stevens; RN Elizabeth M. Berg; RN Julie K. Fletcher; and pharmacy technician Mitchell S. Williams.[1]

Plaintiff's allegations can be summarized as follows. Plaintiff has suffered from constipation and bleeding from his rectum "for several years." Brief at pp. 1-3, 11-15.[2] He underwent hemorrhoid surgery on April 8, 2008. *Id.* at p. 4. The surgeon prescribed stool softeners (Colace and Metamucil) for plaintiff to receive upon his release from the hospital. *Id.* Plaintiff claims he suffered for three or four days at IBC before receiving the prescribed medications, because the facility's pharmacy had to order the prescriptions. *Id.* at pp. 4-5, 14-15. He suffered from severe rectal pain. *Id.* at p. 5. On April 14th, plaintiff received emergency surgery for a prolapsed rectum. *Id.* at pp. 5, 16-17. After the second surgery, the surgeon prescribed four medications, including Percocet for pain. *Id.* at p. 5. Plaintiff alleged that he did not receive these medications, but was provided with ineffective substitutes and housed in a filthy cell. *Id.* at pp. 6, 18. Plaintiff had a third surgery for a hernia on June 18, 2008. *Id.* at p. 7. The surgeon prescribed pain medication, as well as continued use of Colace and Metamucil. *Id.* Plaintiff claims that he did not receive the prescribed medications until one month later. *Id.* Plaintiff seeks $500,000.00 in damages.

---

[1] Two defendants remain unserved. The summons issued to defendant I.B.C. Prison Health & Medical Services was returned to the court unserved, accompanied by a letter from the Michigan Department of Corrections explaining that "no such entity exists." *See* docket no. 11. In addition, the summons issued to defendant Scott L. Holmes, M.D. was returned to the court unserved, accompanied by a letter from "the Corporation Company" stating that it was not the registered agent for this defendant. *See* docket no. 5.

[2] Plaintiff's "complaint" consists of a 4 page pre-printed complaint, handwritten allegations set forth in a 40 page "Brief in support." *See* docket no. 1. For purposes of this report, the court will refer to these documents as "Compl. at p. _" and "Brief at p. __." Plaintiff has also filed a 25-page attachment. *See* docket no. 1-2. For purposes of this report, the court will refer to these documents as "Attachment at p. __."

## II. Plaintiff's request for default judgment

Plaintiff's request for a default judgment is procedurally improper. The clerk's office has not entered a default in this matter pursuant to Fed. R. Civ. P. 55(a). Entry of a default under Rule 55(a) is a prerequisite to entry of a default judgment under Rule 55(b). *Ramada Franchise Systems, Inc. v. Baroda Enterprises, LLC*, 220 F.R.D. 303, 305 (N.D. Ohio 2004). In addition, while plaintiff seeks entry of a default judgment as to all defendants, he has failed to serve two defendants and the remaining seven defendants have moved to dismiss his complaint. *See* docket nos. 5, 11, 20. Accordingly, plaintiff's notice or motion seeking default judgment (docket no. 19) should be **DENIED**.

## III. Defendants' motion to dismiss

### A. Legal Standard

Defendants seek to dismiss plaintiff's action pursuant to Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted). In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Churchs Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the

3

Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008); *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.") (internal quotation marks and citations omitted).

**B.      Exhaustion**

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e, provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' " *Jones*, 549 U.S. at 218.

Defendants have moved to dismiss this action for lack of exhaustion. A defendant can raise affirmative defenses in a motion to dismiss. *See, e.g., Jackson v. Schultz*, 429 F.3d 586, 589 (6th Cir. 2005) (defendant could properly raise the affirmative defense of qualified immunity "based on a pre-answer motion to dismiss"). And it is appropriate for defendants in a prisoner civil rights action to raise the affirmative defense of failure to exhaust administrative remedies in a

4

motion to dismiss. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir.), cert. denied 129 S. Ct. 733 (2008). "Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense [under the PLRA] . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Id.* (internal quotation marks omitted).

The MDOC grievance procedure is an administrative review regulated by the agency's Policy Directives. This court may take judicial notice of plaintiff's grievance filings in this state agency proceeding for purposes of deciding a motion to dismiss. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute); *Marshek v. Eichenlaub*, No. 07-1246, 2008 WL 227333 at *1 (6th Cir. Jan. 25, 2008) (court can take judicial notice of prisoner's transfer as shown in the Bureau of Prison's Inmate locator accessed on the agency's official website); *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2nd Cir. 1991) ("[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated"); *Walker v. Woodford*, 454 F.Supp.2d 1007, 1021-23 (S.D.Cal. 2006) (the Court may consider a limited set of documents without converting a Rule 12(b)(6) motion into a motion for summary judgment, including matters that can be judicially noticed; documents pertaining to the prisoner's exhaustion efforts "are part of a state administrative proceeding and may be judicially noticed, not for the truth of their contents but for the fact that the grievance proceeding occurred"); *Eggerson v. United States*, 1: 05-cv-594, 2006 WL 1720252 at *3 (W.D.Mich. June 22, 2006) ("In

5

ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201"); *Walker v. Abdellatif*, No. 1:07-cv-1267, 2009 WL 579394 (W.D. Mich. March 5, 2009) (taking judicial notice of MDOC prisoner grievance proceedings in deciding motion to dismiss for lack of exhaustion); *White v. Correctional Medical Services, Inc.*, No. 1:08-cv-277, 2009 WL 596473 (W. D. Mich. March 6, 2009) (same).

Taking judicial notice of a prisoner's administrative grievance proceeding is consistent with the purpose of the PLRA's "invigorated" exhaustion provision, which Congress enacted to control the "sharp rise in prisoner litigation in the federal courts." *Woodford*, 548 U.S. at 84. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones*, 549 U.S. at 204.

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. Policy Directive 03.02.130 at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

6

> The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

Plaintiff bases his claim on three grievances: IBC 0804-958-28I (grievance "958") (dated April 17, 2008); IBC 0804-959-28I (grievance "959")(dated April 17, 2008); and IBC 0807-1603-12FI (grievance "1603") (dated July 12, 2008). Compl. at p. 3. Plaintiff attached a fourth grievance to the complaint, IBC 0804-901-12N (grievance "901") (dated April 10, 2008). Attachment at pp. 16-18.

In grievance 901 (dated April 10, 2008), plaintiff complained that he did not receive his stool softeners in a timely and reasonable manner. *Id.* Plaintiff also stated that the administrative segregation unit was "not sanitary enough." *Id.* The MDOC denied this grievance on April 24, 2008. *Id.* Plaintiff was seen by a medical practitioner on April 10, 2008, the stool softener (Colace) was ordered, and he received the medication the next day. *Id.*

In grievance 958 (dated April 17, 2008), plaintiff complained that the MDOC did not provide him with the pain medication prescribed by a doctor from Sparrow Hospital, but gave him substitutes. Attachment at pp. 3, 10. The MDOC denied the grievance on April 21, 2008, because

7

plaintiff did not attempt to resolve the issue before filing the grievance. *Id.* The grievance reviewer also noted that prescriptions by non-MDOC medical providers are recommendations only. *Id.*

In grievance 959 (dated April 17, 2008), plaintiff complained that MDOC health care providers did not give him narcotic and non-narcotic medication prescribed by the physician after his emergency surgery for a rectum collapse on April 15, 2008. Attachment at pp. 2, 9. The MDOC rejected the grievance on April 21, 2008, because plaintiff did not attempt to resolve the grievance prior to filing it and because he continued filing grievances while on modified access. *Id.*

In grievance 1603 (dated July 12, 2008), plaintiff complained that he was deprived of medication that had been ordered on June 25, 2008. Attachment at pp. 4-6, 12, 24. The MDOC denied this grievance on July 31, 2008, with the reviewer noting that plaintiff made no attempt to resolve the issue before filing. *Id.* After interviewing plaintiff, the reviewer noted that the objective evidence did not comport with plaintiff's complaint. *Id.* Specifically, although plaintiff "had multiple contacts with Health Care," there was no documentation that he was out of medication. *Id.*

The MDOC records reflect that plaintiff did not file a Step III appeal for any of the four grievances at issue (i.e., nos. 901, 958, 959 and 1603). *See* Armstrong Aff. and Grievance Inquiry (docket no. 21-3). Because plaintiff failed to file any Step III appeals, he did not properly exhaust any of the grievances relied upon by him. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93. In his response, plaintiff does not claim to have filed any Step III appeals. Rather, plaintiff contends that MDOC personnel thwarted him from exhausting the grievances by transferring him to another facility on October 8, 2008. Plaintiff's Response at pp. 2, 11 (docket no. 27). Plaintiff's contention is without merit. Assuming that plaintiff was transferred in October 2008, this transfer would not have affected his ability to appeal grievances which were denied in

8

April and July 2008. Plaintiff should have filed a Step II appeal within 10 business days after receiving the Step I response. Policy Directive 03.02.130 at ¶ BB. Plaintiff should have filed his Step III appeal within 10 business days of receiving the Step II response, or, if no Step II response was received, within 10 business days of when the response was due (i.e., within 15 business days of filing the Step II grievance). *Id.* at ¶¶ BB, CC and FF. Under this framework, after the denial of plaintiff's most recent Step I grievance on July 31, 2008, he should have filed a Step II appeal within 10 business days (August 14, 2008). Assuming that the MDOC did not respond to the Step II appeal, plaintiff should have filed his Step III appeal within 15 business days (September 5, 2008). In summary, plaintiff should have filed the Step III appeal for his most recent grievance by no later than September 5, 2008, more than one month *before* his transfer to the other correctional facility. Plaintiff's grievances are clearly unexhausted. Because plaintiff failed to properly exhaust the grievances as required by the PLRA, *see Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93, defendants are entitled to dismissal of this action.

**IV. Recommendation**

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss (docket no. 20) be **GRANTED** and that this action be dismissed.


Dated: December 28, 2009                    /s/ Hugh W. Brenneman, Jr.
                                            HUGH W. BRENNEMAN, JR.
                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).